## PILLSBURY, Deputy Com'r, v. LIBERTY MUT. INS. CO. et al.

### No. 10507.

Circuit Court of Appeals, Ninth Circuit.

June 30, 1944.

Concurring opinion July 19, 1944.

(44 Stat. 1424, U.S.C.A. Title 33, Chapter 18, § 901 et seq.) enlarged by the Defense Bases Act of August 16, 1941 (55 Stat. 622, 42 U.S.C.A. §§ 1651–1654), hereinafter called the Act, was vacated and set aside. The judgment of the district court also perpetually enjoined Charles F. Keil, the recipient of the award, from taking any further proceedings in the cause.

The award of the appellant Commissioner found that Keil had had his leg fractured during the period of his employment by Contractors Pacific Naval Air Bases, hereinafter called the Employer, to work on a defense base in the Hawaiian Islands, and that the "injury occurred in the course of and arose out of his employment." The district court, so far as here pertinent, held that: "There was not before said Deputy Commissioner any evidence proving or tending to prove that the said accidental injuries to respondent Charles F. Keil, Jr. were suffered (1) while said respondent was in the course of his employment, or (2) that said accidental injuries arose from his employment * * *."

We agree with the district court. The undisputed facts are that on May 12, 1942, Keil, in Denver, Colorado, signed a preliminary contract with the Employer for his service on a Hawaiian defense base. He was supplied with bus transportation from Denver to Oakland, California, where, upon arrival in the latter city on May 14, 1942, he entered into a final contract of employment with full compensation beginning on that same day. The contract included transportation to Hawaii to be later furnished by the Employer. No steamers for Hawaii were immediately available but one was expected to be ready for sailing on May 21, 1942. On that sailing date, only three employees of a number going to Hawaii were shipped out. Keil remained in Oakland.

Keil's contract did not include his housing and subsistence and he paid the bill of his Oakland hotel and for his meals from his own funds. At six o'clock on Sunday evening, May 24, 1942, while still awaiting transportation to Hawaii at some future undetermined date, he had dinner with a friend at a restaurant at 16th and San Pablo Avenue on the westerly side of the City of Oakland. Thereafter, "to kill time," he and his friend took a long "stroll" from 16th and San Pablo, across that city, to Lake Merritt, a portion of the Oakland park system, on the easterly side of the city, and then down along the

Frank J. Hennessy, U. S. Atty., and James T. Davis, Asst. U. S. Atty., both of San Francisco, Cal. (Ward E. Boote, Chief Counsel, of Washington, D. C., and Herbert P. Miller, Associate Counsel, U. S. Employees' Compensation Commission, of New York City, of counsel), for appellant.

Theodore Hale and Carroll B. Crawford, both of San Francisco, Cal., for appellees.

Before GARRECHT, DENMAN, and MATHEWS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment of the district court in which an award of appellant Pillsbury, Deputy Compensation Commissioner under the Longshoremen's and Harbor Workers' Compensation Act

southern Oakland waterfront. This stroll continued until 8:30 p.m., when, in proceeding toward his hotel, Keil was struck by an automobile, causing the injury. Keil summarized the situation by his testimony that he was "not on any particular expedition to any particular place at the time."

We are unable to see any difference with reference to Keil's function as an employee between this "stroll" in Oakland and his injury while attending an evening's performance in a moving picture theatre in an Hawaiian town of his defense plant by the collapse of the building. In a remote sense the recreation of the stroll in the Oakland park and on the waterfront and the entertainment of the cinema may make a more efficient laborer. So also he might work better the next day because of a dose of bicarbonate of soda after his dinner. The Act has yet to be interpreted as making the employer an insurer for the employee accidentally swallowing strychnine or for the collapse of the theatre. No more did it insure Keil against accident during his Sunday evening stroll after dinner to no "particular place" in Oakland for the purpose of "killing time."

Appellant cites several cases but none wherein a workman's injuries have been declared compensable when they occurred, as here, on a non-working day; while he was on no errand for his employer; while he was boarding himself and eating where and when he pleased; while he was not engaged in travel movements incident to his employment, was not in any way under his employer's direction at the time he was injured, and was not injured by an instrumentality owned or controlled by the Employer. We know of no such case.

We hold that appellant Commissioner's finding that Keil's injury occurred in the course of and arose out of his employment is not supported by the evidence. The uncontradicted evidence affirmatively shows the contrary and hence

the presumption of § 20 of the Longshoremen's and Harbor Workers' Act of March 4, 1927, ch. 509, 44 Stat. 1436, 33 U.S.C.A. § 920, that Keil's claim comes within its provisions is overcome. Cf. New York Life Ins. Co. v. Gamer, 303 U.S. 161, 171, 58 S.Ct. 500, 82 L.Ed. 726, 114 A.L.R. 1218.

The judgment appealed from is affirmed.

MATHEWS, Circuit Judge (concurring in the result).

I concur in the result, but do not concur in all that my associates (Judges Garrecht and Denman) say in their opinion. My associates say:

"We are unable to see any difference with reference to Keil's function as an employee between this 'stroll' in Oakland and his injury while attending an evening's performance in a moving picture theatre in an Hawaiian town of his defense plant by the collapse of the building. In a remote sense the recreation of the stroll in the Oakland park and on the waterfront and the entertainment of the cinema may make a more efficient laborer. So also he might work better the next day because of a dose of bicarbonate of soda after his dinner. The Act has yet to be interpreted as making the employer an insurer for the employee accidentally swallowing strychnine or for the collapse of the theatre. No more did it insure Keil against accident during his Sunday evening stroll after dinner to no 'particular place' in Oakland for the purpose of 'killing time.' "

Keil never claimed to have suffered an "injury while attending an evening's performance in a moving picture theatre in an Hawaiian town of his defense plant by the collapse of the building," or to have taken "a dose of bicarbonate of soda after his dinner," or to have swallowed strychnine, accidentally or otherwise. There is nothing in the record about theatres, collapsed buildings, bicarbonate of soda or strychnine. I see no reason for discussing such matters.