Luther W. VARNEY

v.

Stephen O'HEARNE, Deputy Commissioner, 4th Compensation District, Oriole Ship Ceiling Co. and New Amsterdam Casualty Co.

No. 3754.

United States District Court
D. Maryland, Admiralty Division.
June 1, 1956.

**422**

whole, to support the finding of the Deputy Commissioner that on January 28, 1955, claimant had recovered from the effects of an injury he received on February 1, 1954, so that he was no longer incapacitated because of said injury from earning the wages he was receiving at the time of the injury in the same or any other employment.

Claimant, aged 38, is a ship ceiler. He had injured his back before, in January, 1952, and had received $2,000 in settlement, in lieu of compensation. Dr. Gellman, an orthopedist, had estimated in May, 1952, that claimant had sustained a permanent partial disability of the back to the extent of 20%. Claimant contends, however, that this disability had cleared up before the accident of February 1, 1954. The X-rays in 1952 had shown a mild non-union of the top of the sacrum, congenital in origin, and some arthritis around the fourth lumbar vertebra. On February 1, 1954, claimant sustained the injury involved in this case, a sprain of the left knee and a contusion of the right thigh, which cleared up promptly, and a low back strain, which is the matter in controversy.

Claimant received compensation for temporary total disability from February 2, 1954, to May 16, 1954, less one day, and for temporary partial disability from June 25, 1954, to January 27, 1955. He had worked at full wages from May 17, 1954, to June 24, 1954, and had done various odd jobs, some at his mother's lunchroom, after June 24, 1954.

The Deputy Commissioner held two hearings, on January 17, 1955, and April 4, 1955, to determine whether the claimant is entitled to any compensation for permanent partial disability as a result of the injury of February 1, 1954. Since no disability covered by the schedule in sec. 908(1–20) of title 33 U.S.C.A. is claimed, the question before the Deputy Commissioner was whether the injury of February 1, 1954, had caused any permanent reduction in his wage earning capacity, in the same employment or otherwise, below the wages he was earn-

Maurice J. Pressman, Baltimore, Md., for appellant.

William F. Mosner, Asst. U. S. Atty., Baltimore, Md. (George Cochran Doub, U. S. Atty., Baltimore, Md., and Stuart Rothman, Sol. of Labor, Ward E. Boote, Asst. Sol., Herbert P. Miller and James Edward Hughes, Attys., U. S. Department of Labor, Washington, D. C., on the brief), for O'Hearne.

Charles J. Stinchcomb and Kieffner, Stinchcomb & Royster, Baltimore, Md., for Oriole Ship Ceiling Co. and New Amsterdam Cas. Co.

THOMSEN, Chief Judge.

The question before the court in this proceeding is whether there is substantial evidence on the record, considered as a

ing at the time of that injury. Sec. 908 (21). See also Sec. 902(10).

The claimant called two doctors, the carrier one, and both sides introduced a number of medical reports from doctors who had examined the claimant in connection with the 1952 accident. Neither side called any doctor who had seen the claimant before February 1, 1954. Other medical reports and X-rays since February 1, 1954, were introduced by both sides. At the conclusion of the first hearing, the Deputy Commissioner referred the claimant and the reports to Dr. Lippman, the Chief of Orthopedic Service at the U. S. Public Health Service (Marine) Hospital in Baltimore, for an independent opinion. Dr. Lippman's report was furnished to counsel, and he appeared as a witness and was cross-examined at the second hearing.

On October 31, 1955, the Deputy Commissioner found "that on 28 January 1955, the claimant had recovered from the effects of his injury on 1 February 1954", and entered an order disallowing the claim for permanent partial disability. Claimant appealed to this court. After the decision of the Fourth Circuit in Ennis v. O'Hearne, 223 F.2d 755, the Deputy Commissioner requested that the case be remanded to him "for the purpose of amending his Order showing the basis for his findings in the case, or amending the Order by making more specific findings". The request was granted, over claimant's objection, and on October 31, 1955, the Deputy Commissioner filed a paper entitled "Basis for Findings", which discussed the testimony of the doctors at considerable length, and concluded "that, subsequent to January 28, 1955 (to which date he received compensation) the claimant was not incapacitated because of injury from earning the wages he was receiving at the time of his injury in the same or any other employment".

■ The findings of the Deputy Commissioner "are to be accepted unless they are unsupported by substantial evidence on the record considered as a whole". O'Leary v. Brown-Pacific-Maxon, 340 U. S. 504, at page 508, 71 S.Ct. 470, at page 472, 95 L.Ed. 483; Ennis v. O'Hearne, 4 Cir., 223 F.2d 755; Gooding v. Willard, 2 Cir., 209 F.2d 913. It is not the function of this court to find the facts, nor to determine whether the decision of the Deputy Commissioner is supported by the weight of the evidence. Such a determination is always a difficult task when the reviewing court does not see the witnesses, and has no opportunity to ask them questions; it would be a hopeless task in this case, where the decision necessarily turned upon the credibility of the claimant, and the weight to be given to his subjective complaints. The Deputy Commissioner saw the claimant and the other witnesses, and was better able than any reviewing court to determine how much weight should be given to claimant's testimony with respect to his alleged recovery from the 1952 accident and to his subjective complaints since the latter part of 1954. Ennis v. O'Hearne, 4 Cir., 223 F.2d 755; Gooding v. Willard, 2 Cir., 209 F.2d 913; Kwasizur v. Cardillo, 3 Cir., 175 F.2d 235; Hudnell v. O'Hearne, D.C.D.Md., 99 F.Supp. 954.

■ The various opinions of the doctors who testified were based largely upon the weight the respective doctors gave to the subjective complaints, and upon the condition of the claimant's back before the 1954 accident which they respectively assumed. Dr. Ullrich, an orthopedic surgeon called by claimant, testified that his opinion was based entirely on subjective complaints; that if claimant was not truthful and accurate, his opinion would be worthless; that so far as the objective findings were concerned, the claimant could be working; and that he "presumed" claimant had recovered from the first accident. Dr. Cianos, also called by the claimant, testified that if claimant were sent to five or six or seven physicians for evaluation of his disability, "you might get anywhere from nothing to fifty percent".

There was certainly substantial evidence in the record from which the Deputy Commissioner might have found that claimant was still disabled by the injury of February 1, 1954, but there was also substantial evidence on the record considered as a whole that, after January 27, 1955, claimant no longer had any disability (i. e. loss of wage earning capacity) caused by the injury of February 1, 1954, but that whatever disability he had after January 27, 1955, was caused by the congenital condition and the 1952 injury.

Dr. Cianos, who examined claimant in August and December, 1954, found some muscle spasm in the erector muscles, and Dr. Everett Jones, who treated claimant for the carrier, found mild spasm of the paravertebral muscles as late as July, 1954, but found no muscle spasm in November, 1954. Dr. Ullrich, who examined claimant in February, 1955, found no muscle spasm, and based his opinion upon subjective complaints.

Dr. Lippman, who examined the claimant on January 28, 1955, testified that at the time of the examination there was no paravertebral lumbar muscle spasm; there was subjective complaint of pain at the lumbosacral joint, but no objective tenderness, and the examination was otherwise essentially negative; that the radiologist's report showed that, other than a spina bifida occulta of the first sacral segment, a congenital condition, no significant abnormality was visualized in the lumbar spine. Dr. Lippman stated that his diagnosis was "lumbosacral strain, chronic, old", "less than five percent"; that the "disability is not greater now than it was from the injury of 1–10–52"; and that the claimant could return to duty.

Claimant's attorney attacks the testimony of Dr. Lippman because the history was taken partly by the resident at the hospital, because Dr. Lippman considered the reports of other doctors, and because he assumed that claimant had some disability in his back immediately before the 1954 accident.

Although Dr. Lippman testified that the history at the Marine Hospital was taken partly by the resident and partly by himself, he testified that he went over with the claimant that part of the history which had been taken by the resident.

Each of the doctors testified from the history given him by the claimant, the reports of other doctors which were shown to him and offered in evidence, and from his own examinations. Each doctor had to assume certain basic facts before he could give any opinion at all. Claimant's attorney examined in this manner the doctors whom he called as witnesses, and his objection to Dr. Lippman's basing his opinion upon similar evidence is a case of the pot calling the kettle black. Moreover, in many cases this is the only practical way to handle a hearing before a Deputy Commissioner. The various doctors do not remain in the room during the entire hearing, or hearings, but come and go as their engagements require. The important thing is that each doctor state clearly the observed facts or the assumed facts upon which his opinion is based, so that the Deputy Commissioner will be able to tell how much weight to give to the opinion of each doctor after the Deputy Commissioner has determined what the basic facts really are.

In this case each doctor who testified had to assume some facts with respect to the condition of claimant's back just before the injury of February 1, 1954. He might assume claimant's testimony to be true, or he might assume the facts shown in Dr. Gellman's report, which was in evidence, and infer that the conditions shown by the X-rays taken in May, 1952, as well as by the X-rays taken in February, 1954, which showed no evidence of recent injury, must also have existed on January 31, 1954.

Such opinion evidence by doctors is received every day in damage suits. *A fortiori*, it is admissible in a proceeding before a Deputy Commissioner under the Longshoremen's and Harbor Workers' Compensation Act, which provides, in sec.

923(a): "In making an investigation or inquiry or conducting a hearing the deputy commissioner shall not be bound by common law or statutory rules of evidence or by technical or formal rules of procedure, except as provided by this chapter; but may make such investigation or inquiry or conduct such hearing in such manner as to best ascertain the rights of the parties."

Since there was substantial evidence on the record considered as a whole to support the finding of the Deputy Commissioner that claimant was not disabled after January 27, 1955, as a result of the injury of February 1, 1954, the decision must be and it is hereby confirmed.