**ATLANTIC AND GULF STEVE-DORES, Inc.,**

and

**Massachusetts Bonding and Insurance Company**

v.

**James R. MICHALSKI**

and

**Stephen O'Hearne, Deputy Commissioner.**

No. 3753.

United States District Court
D. Maryland.

Sept. 21, 1956.

William W. Cahill, Jr., and Weinberg & Green, Baltimore, Md., for plaintiffs.

Claude L. Callegary and Callegary, Bracken & Callegary, Baltimore, Md., for Michalski.

Walter E. Black, Jr., U. S. Atty., and James H. Langrall, Asst. U. S. Atty., Baltimore, Md., for O'Hearne.

THOMSEN, Chief Judge.

This proceeding presents the question whether there is substantial evidence on the record considered as a whole to support the finding of the Deputy Commissioner that in April, 1955, the claimant was still totally disabled as a result of an accidental injury sustained in May, 1951.

Claimant, who was 51 years old in 1951, had been a stevedore for twenty-five years. In May, 1951, while working in the lower hold of the S. S. City of Calcutta, a cluster of lights fell from the 'tween deck and struck him on the head,

3. See Footnote 1.

causing a contusion of the scalp and precipitating a psychoneurosis. At first the claimant was paid compensation without an award. Following a hearing in December, 1952, the Deputy Commissioner entered an order in which he found that as a result of the injury the claimant had been wholly disabled since May 19, 1951, although he had attempted to perform his regular work on fifteen separate occasions. The Deputy Commissioner further found that "such total disability is continuing and is likely to continue until the claimant has been hospitalized and has received the benefit of treatment recommended by Dr. O. R. Langworthy", which, it appears from the record, was shock treatment.

In November, 1954, the insurance carrier applied for a review of that compensation order on the grounds that "the cause of disability antedates the injury and that the claimant has been observed doing work which suggests that he has a wage earning capacity". A hearing was held on March 22, 1955, after which the Deputy Commissioner found: " * * * that during the period 17 December 1953—18 July 1954, the employer and carrier had the claimant observed by a private investigator for 7 days and on some of the days, the investigator made motion pictures of the claimant engaged in poling a skif (sic) or rowboat, crabbing and on one occasion, doing some carpenter work and painting; that the investigator's testimony shows the claimant engaged in these activities for one to three hours; that the claimant admitted engaging in these and similar activities for some time for short periods, including one time, while using an outboard motor, he misjudged the clearance between two barges and rammed a barge which he said caused him to be knocked unconscious; that the medical testimony shows some improvement in the claimant's medical condition; that neither the factual nor the medical testimony shows that there has been such improvement in the claimant's condition that he can engage in any industrial employment for which he is otherwise qualified by rea-son of age, education, training, general physical and mental capacity and adaptability." On these findings the Deputy Commissioner rejected the application for modification of award "on the ground that the claimant's condition has not improved to the extent that he has a wage earning capacity".

All of the psychiatrists are agreed that before the accident the claimant was emotionally unstable, with a great deal of tension, as a result of difficulties with his father when he was young and with his wife during recent years. He was a hypochondriac, accident prone and neurotic, but had not been losing time from work. Although the accident caused no organic injury, except the trifling contusion of the scalp, it produced a severe emotional reaction which aggravated his neurosis and caused a very severe psychoneurosis.

At the hearing in December, 1952, Dr. David D. LeGrand testified that in his opinion the injury was the precipitating factor of the psychoneurosis. Although his written report had concluded that "this man is able to work and he should not be considered disabled", he qualified this in his testimony, and said that there was an emotional, psychiatric disability not related to any injury to the brain or anything like that. He testified that in his opinion termination of litigation would help the claimant's recovery.

Dr. William L. Fearing testified that claimant had a neurosis which, as a result of the accident, had been exaggerated and aggravated; that the best treatment to remedy this condition to some degree would be "settlement in a compensatory manner"; that the underlying neurotic condition will remain as long as the patient lives, but it would probably subside to the degree that he would be able to engage in some remunerative occupation.

Dr. Ralph P. Truitt testified in December, 1952, that the basic problem was hysteria, and that he did not see how the claimant could be helped with treatment unless there was a permanent and final disposition of this case. In March, 1955,

Dr. Truitt testified that there had been no substantial change in the claimant's condition; that before the accident the claimant had had certain emotional problems; that the accident had caused him to fixate those problems at the time of the accident; that compensation questions have helped to fixate it further; that the claimant now has a compensation neurosis as distinguished from a traumatic neurosis; that in his opinion the claimant would be able to work if this case were definitely settled.

Dr. Langworthy testified in March, 1955, that he had seen the claimant on ten occasions and his condition had remained about the same; that claimant had an emotional illness of almost psychotic proportions; that since 1952 there had been some slight improvement; that he recommended light work on the water and about the docks as occupational therapy, as a start toward a gainful occupation; but that in his opinion the claimant will probably never be able to work again as a stevedore because of the danger involved; that the matter of the claimant's own motivation is a very important factor.

The lay testimony in the record is relatively unimportant.

■ It is not the function of this court to find the facts, nor to determine whether the decision of the Deputy Commissioner is supported by the weight of the evidence. The Deputy Commissioner saw the claimant and the other witnesses and was better able than any reviewing court to determine how much weight should be given to the various items in evidence. Ennis v. O'Hearne, 4 Cir., 223 F.2d 755; Gooding v. Willard, 2 Cir., 209 F.2d 913; Kwasizur v. Cardillo, 3 Cir., 175 F.2d 235; Hudnell v. O'Hearne, D.C.D.Md., 99 F.Supp. 954; Varney v. O'Hearne, D.C.D.Md., 141 F.Supp. 421.

■ There was substantial evidence on the record considered as a whole to support the finding of the Deputy Commissioner that the claimant's condition in March, 1955, had not improved to the extent that he had a wage earning capacity. The decision, therefore, must be and it is hereby confirmed.

In view of the fact that all the doctors agreed in December, 1952, that the claimant could best be helped by a final compromise settlement of the compensation case and by his return to work, it seems remarkable that no effort was made to bring this about. Dr. Truitt testified in March, 1955, that he was still of the opinion that the claimant was able to work if the case were definitely settled. Dr. Langworthy apparently felt that the claimant was more seriously ill than Dr. Truitt did, but even Dr. Langworthy felt that the claimant should make a start toward a gainful occupation and that the question of motivation is an important element in the case. Under these circumstances, I suggest that the Deputy Commissioner call counsel for the respective parties together, and, after conference with Dr. Langworthy, determine whether the best interests of all parties may not be served by a final compromise settlement of the case.