**Elvira NARDI, Plaintiff,**

v.

**John A. WILLARD, Deputy Commissioner, Second Compensation District, Defendant.**

United States District Court
S. D. New York.

Nov. 22, 1957.

Gerolama Pelletteri, New York City, for plaintiff. Herbert L. Levy, New York City, of counsel.

Paul W. Williams, U. S. Atty. for Southern Dist. of New York, New York City, for defendant. Harold J. Raby, Asst. U. S. Atty., New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge.

Plaintiff is the widow of Louis Nardi, a deceased longshoreman. She sues under Section 21 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 921, to set aside an order of the Deputy Commissioner of the Second Compensation District which denied her claim for compensation benefits for the death of her husband. The Deputy Commissioner rejected plaintiff's claim upon the grounds that the death of the employee was unrelated to the injury sustained, and that the claimant had failed to give the employer notice of the employee's death within thirty days of its occurrence, as the statute requires.

Plaintiff has moved for summary judgment, and the defendant in turn seeks summary judgment in its favor without formal motion. See Dickhoff v. Shaughnessy, D.C.S.D.N.Y., 142 F.Supp. 535.

Both parties rely, as they must, solely on the record before the Deputy Commissioner. The question presented is whether, on that record, considered as a whole, the Deputy Commissioner's findings are supported by substantial evidence. If they are, such findings are to be accepted and given effect by the courts. If they are not the determination must be set aside. O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 508, 71 S.Ct. 470, 95 L.Ed. 483; Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; Gooding v. Willard, 2 Cir., 209 F.2d 913, 916; Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. Cf., Friend v. Britton, 95 U.S.App.D.C. 139, 220 F.2d 820, 821.

In Gooding v. Willard, supra, the Court of Appeals of this circuit defined the substantial evidence test in the following language (209 F.2d at page 916):

"* * * 'substantial evidence' means more than evidence which, considered by itself alone, would be sufficiently persuasive to induce the trier of fact to give it the credence and weight essential to support findings. It must have those characteristics to such an extent that in the setting made by the entire record the trier may reasonably find in ac-

cordance with it after giving due consideration to whatever else is shown both in opposition or in accord. Judicial review has been extended by the Administrative Procedure Act to embrace adequate exploration of the record as a whole to enable the reviewing court to arrive at its own judgment in determining that."

The facts as they appear from the record before the Deputy Commissioner are as follows:

The decedent, a short stocky man, 62 years old, five feet eight inches in height and weighing some 175 pounds, died on November 30, 1953, while attending a union meeting. The death certificate, executed by the medical examiner, gave the cause of his death as arteriosclerotic heart disease. There was no autopsy.

Just one month before, on October 30, 1953, while decedent was working as a longshoreman in the employ of Jules S. Scotnick, Inc., stevedores, he had suffered a collapse while tiering cargo in the hold of the S.S. Trien Marsk. He felt a severe pain in the chest, went into a cold sweat, had difficulty in breathing, and apparently "passed out". He was brought up from the hold and examined by Dr. Tagliambe, the employer's doctor, who diagnosed his ailment as strain of the left chest wall and angina pectoris, gave him an injection and sent him home. He told Dr. Tagliambe that he had had pain in the same region some seven or eight months previously for which he had received no medical treatment and lost no time from work.

The injury was reported within the statutory period and the decedent was paid compensation as a temporarily totally disabled employee from October 30, 1953 to November 4, 1953.

On November 5, 1953 the decedent was examined by Dr. Secondari, a cardiologist to whom he was sent by Dr. Tagliambe. Dr. Secondari reported that his findings were "suggestive of left ventricular strain or coronary insufficiency". He advised that the patient be kept at rest.

On November 5 the decedent returned to work and continued to work until November 9, 1953. On November 9 he was told that he should cease to work in view of the findings made by Dr. Secondari.

On November 18 he was again examined by Dr. Tagliambe, who found that he had "minimal complaints at the present time referrable to left chest wall region" with blood pressure, pulse and respiration within normal limits.

On November 19, 1953, at the instance of his son, he went to see Dr. DeGregorio, a cardiovascular specialist, whose diagnosis was "arterio sclerotic heart disease; coronary sclerosis; enlarged heart; coronary insufficiency; regular sinus rhythm." Complete bed rest was recommended.

Decedent did not return to work after he had been told to cease work on November 9, and in the interval prior to his death had recurrent chest pains. Apparently, however, when he left to attend the union meeting at which he died he was feeling "pretty good".

The reports of Drs. Tagliambe and Secondari were introduced in evidence at the hearing and three cardiologists testified, Dr. DeGregorio and Dr. Leinoff for the claimant, and Dr. Katz for the carrier. Only one of the cardiologists, Dr. DeGregorio, had seen the decedent, the others giving their opinions on the basis of the medical reports and records.

The opinions of the cardiologists for the respective parties as to the cause of death were conflicting. Their testimony may be summed up as follows:

Dr. DeGregorio, for the claimant, was of the view that the deceased suffered from angina pectoris and coronary sclerosis, but that he had no strain of the heart wall. He had a history of seven months of substernal pain. However, Dr. DeGregorio testified that there were indications that the deceased had sustained damage to his heart muscle in the incident of October 30, perhaps as a result of a hemorrhage in the wall of a coronary artery, and that this was the cause of his death. He "suspected" that

myocardial infarction (destruction of the heart muscle usually due to coronary thrombosis) had taken place. However, he was unable to say whether there were any significant changes in the electrocardiograms which he took from those taken two weeks earlier by Dr. Secondari. He stated on cross-examination that a patient suffering from angina pectoris might die without any exertion at all.

Dr. Leinoff, for the claimant, was of the view that the cardiograms taken by Dr. DeGregorio were "compatible with an acute myocardial infarction" and that "this man suffered a myocardial infarction secondary to coronary insufficiency or coronary thrombosis which was precipitated by the work he was doing at that time," and that symptoms, continuing "on a recurrent basis of chest pains," culminated in his death.

Dr. Katz, for the carrier, on the other hand, testified that the reports of Dr. Secondari, the carrier's cardiologist, on the electrocardiograms taken by him, and Dr. DeGregorio's actual cardiograms, showed no evidence of thrombosis or myocardial infarction, and, in fact, the absence of certain wave changes in the electrocardiograms ruled these factors out. He did not believe "that the alleged injury of October 30, 1953 was causally related to his death." "I can say that this man had an acute myocardial insufficiency or coronary insufficiency without closure. That may give you an awful lot of pain when one gets that but after the subsidence of that acute phase there is no danger over the myocardium." On cross-examination he gave it as his opinion that the deceased "died as a culmination of an underlying pathological condition which was not aggravated by the incident of October 30". He stated that "if the injury of October 30 was severe enough to have caused death within a month, and with the underlying coronary sclerosis, certainly within a reasonable time this fellow should have changes in the electrocardiogram."

The Deputy Commissioner found that the decedent

" * * * was suffering from arteriosclerotic heart disease which antedated the injury sustained; that the effects of the injury sustained were transient and resulted in no permanent damage to the heart; that the death of the employee on November 30, 1953 was due to said arterioslerotic heart disease and was neither directly nor indirectly related to the injury of October 30, 1953; * * *"

Based on these findings of fact he gave as his first reason for rejection of the claim that "the death of the employee was unrelated to the injury sustained."

The issue as to whether or not the death of the decedent was related to the injury of October 30 was placed squarely before the Deputy Commissioner for determination on the basis of conflicting medical testimony. It cannot be said on this record as a whole that there was no substantial evidence to support his findings.

It was conceded for all practical purposes that the decedent had a preexisting arteriosclerotic heart disease and that this condition had certainly a great deal to do with his death. There was doubt as to whether, on October 30, there had been a thrombosis or myocardial infarction brought on by the work which decedent was doing. There was also doubt as to whether, if a thrombosis or myocardial infarction had occurred at that time, it had inflicted such permanent damage to the heart wall and muscles as would have precipitated a second incident under the circumstances occurring on November 30 when the deceased died. The testimony of Dr. DeGregorio, who had examined decedent, was inconclusive on this point. The respective cardiologists for the claimant and the carrier expressed opposing opinions on the subject.

As the trier of the facts, the Deputy Commissioner was entitled to re-

solve this issue either way upon the basis of the evidence before him. His determination of the issue was dependent upon the inherent probability of the testimony in the light of all the facts and upon the credibility given to the testimony of the various witnesses whom he heard. As the Court of Appeals for this circuit said in Gooding v. Willard, supra, in passing upon a somewhat similar situation before the Labor Board:

"Where it cannot be said that the testimony was so inherently improbable that it was unworthy of belief as a matter of law, and that certainly was not so as to any of this testimony in respect to such a technical and complicated issue, the determination of the trier of fact as to whether the evidence of one set of witnesses who testified before him rather than that of the other is the more reliable is controlling."

See, also, Standard Distributors, Inc. v. Federal Trade Commission, 2 Cir., 211 F.2d 7; Atlantic & Gulf Stevedores, Inc. v. Michalski, D.C.Md., 144 F.Supp. 475; Varney v. O'Hearne, D.C.Md., 141 F. Supp. 421; Feeney v. Willard, D.C.S.D. N.Y., 129 F.Supp. 414.

The facts in the instant case are distinguishable from those in Friend v. Britton, supra, relied upon by the plaintiff. There it was established that the prior injury had materially aggravated the diseased heart condition and that the disabling effect of the injury continued until death and there was an express finding to this effect. This finding was held to be inconsistent with a later finding that death had not been hastened by the injury but that it was the result of natural and progressive deterioration. Moreover, it may be said in passing that in the Friend case the court was of the view that in a review of this character "doubts, including the factual, are to be resolved in favor of the employee or his dependent family."

In Gooding v. Willard, supra, the Court of Appeals for this circuit took a somewhat different view stating:

"* * * that the burden to show that the accident was a contributing cause of the death was on the appellee [the claimant]."

The presumption in favor of the claimant contained in Section 920 of the Longshoremen's and Harbor Workers' Compensation Act has not "the attribute of evidence in the claimant's favor." "Its only office is to control the result where there is an entire lack of competent evidence." Del Vecchio v. Bowers, 296 U.S. 280, 286, 56 S.Ct. 190, 193, 80 L.Ed. 229. Where competent evidence has been introduced by the carrier on the question of lack of causal connection between the accident and the death, presumption drops out and the question must be determined by the Deputy Commissioner on the basis of all the evidence before him. Gooding v. Willard, supra; Eschbach v. Contractors, Pacific Naval Air Bases, 7 Cir., 181 F.2d 860; Pillsbury v. Liberty Mut. Ins. Co., 9 Cir., 143 F.2d 807; Liberty Mut. Ins. Co. v. Gray, 9 Cir., 137 F.2d 926; Pate Stevedoring Corp. v. Henderson, D.C.S.D.Ala., 44 F. Supp. 12; cf., Southern Pacific Co. v. Sheppeard, 5 Cir., 112 F.2d 147; Robinson v. Bradshaw, 92 U.S.App.D.C. 216, 206 F.2d 435.

Since there was substantial evidence here to support the findings of the Deputy Commissioner this court will not disturb them, or attempt to substitute any judgment which it might have for that of the trier of the facts. The finding of the Deputy Commissioner that "the death of the employee was unrelated to the injury sustained" is therefore affirmed.

This view of the case makes it unnecessary to pass upon the objection raised to the Commissioner's rejection of the claim upon the ground that there was lack of notice of death to the employer.

The defendant's motion for summary judgment is granted. Settle order on notice.