## HOAGE, Deputy Commissioner, et al. v. EMPLOYERS' LIABILITY ASSUR. CORPORATION, Ltd.

### No. 5710.

Court of Appeals of the District of Columbia.
Argued March 7 and 8, 1933.
Decided April 3, 1933.

716

James E. McCabe, of Washington, D. C., for appellants.

Charles B. Tebbs and Frank H. Myers, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is a compensation case in which the deputy commissioner made an award. The insurance carrier applied to the Supreme Court of the district for an injunction, which was granted, and an appeal from that decree taken here.

The relation of master and servant is admitted; also that the employment was within the provisions of the act. The main question involved is whether the injury complained of was covered by the act. Appellee also defends on the ground that it was not the insurance carrier chargeable on the risk, and that even if it were, it is not liable because the notice of injury required by the act to be given by the employee to the employer or the carrier was not in fact given. The deputy commissioner found the facts to be as follows:

Injured (appellant) was employed by Southern Dairies (Inc.), in its plant in the District of Columbia. It was his duty to record temperatures, repair pipes, and perform other services in the cooling rooms of the plant. The rooms were used for hardening ice cream and were maintained at temperatures ranging from zero degrees F. to 22 degrees below zero F. His duty was to observe the temperature in these rooms each two hours and to record it in a log book. There were seven of these rooms and the inspection and recording of the temperature occupied on each inspection from 15 to 20 minutes. On the day in question, which was the 4th of December, 1930, injured, on returning to the engine room, noticed a peculiar numbness in his right foot. A similar numbness on previous occasions had been overcome after a little while by stamping his feet.

On the 4th of December, however, he was unable to renew circulation in the usual manner, and the resulting condition continued and grew worse and the numbness extended throughout his foot with gradually increasing symptoms. Notwithstanding, he continued to perform his duties as usual, but on December 9th and again on December 11th he consulted his family physician and later, on December 26th, a blood specialist; "that it was found that the claimant * * * was suffering from thrombo-angitis obliterans, and was possibly complicated by arteriosclerosis; that the claimant continued at his work until January 3, 1931, when he was compelled to relinquish his employment because of the condition in his right leg, which was found to be interference with the blood circulation in the

foot; that on January 5, 1931, resection of the femoral artery and vein, right leg, was performed and portions of the resected area were examined by the pathologist, who reported a finding of arteriosclerosis, Monckeberg's type; however, the resection of the femoral artery did not restore proper circulation in the member, and the third, fourth and fifth toes of the right foot became gangrenous, and it became necessary to amputate the right foot above the knee, which was performed, January 23, 1931 * * *; that the medical evidence adduced before the Deputy Commissioner shows that thermic changes from extreme cold to comparatively warm temperatures will produce vasomotor changes which cause a hypostatic condition in the blood flow—i. e., a tendency to retard circulation, and that a disturbance of this character will result in numbness in the member affected, the foot in this case; furthermore, where hypostatic changes occur in a person suffering from arteriosclerosis there is a tendency for the blood to clot, particularly where the internal wall of the blood vessels have undergone some pathological change with the resulting occlusion in this case of the blood vessels and subsequent thrombosis in the larger vessels of the leg; that the medical evidence shows that exposure to thermic changes such as the evidence discloses in this case will aggravate a pre-existing condition of arteriosclerosis and will precipitate a condition such as that suffered by the claimant herein, the static or stationary condition of the blood being the proximate cause of a subsequent thrombotic condition; that the immediate effects of cold cause an interference in the superficial circulation which, but for the arteriosclerosis in this case, would probably not have resulted in any disability, and the evidence of thermic changes coupled with the previously existing condition gives a complete picture of the underlying causes which result in the disability to the claimant herein, all of which have a causal relation with his employment, and the resulting gangrene and amputation of the claimant's right leg were proximately caused by the condition of his employment."

In the case of Crowell v. Benson, 285 U. S. 22, 46, 52 S. Ct. 285, 291, 76 L. Ed. 598, the Supreme Court said that "as to questions of fact, arising with respect to injuries to employees within the purview of the act, the findings of the deputy commissioner, supported by evidence and within the scope of his authority, shall be final." And in this court and in the other federal appellate courts the rule is well established that mere conflict in the testimony or a preponderating weight of evidence will not justify disturbing the findings of the commissioner. Except as to so-called "constitutional rights" the decision of the commissioner is final where there is evidence to support it, and an award made by the commissioner in such circumstances can be set aside only "if not in accordance with law."

We have been at pains to examine carefully the medical evidence taken before the deputy commissioner, and it is enough to say that sufficient appears to support the findings and conclusions of the deputy commissioner. We are therefore confined to the inquiry, Did appellant Kerper receive an injury arising out of and occurring in the course of his employment—which, of course, includes the query whether there was an aggravation by injury resulting in disability from a pre-existing condition.

It is insisted by the appellee that there is no evidence in the record of any injury within the terms of the compensation act. It says that what occurred was the normal effect of cold on blood vessels diseased by longstanding arteriosclerosis, and that this does not constitute an accidental injury within the meaning of the statute.

The term "injury," as defined by the statute (Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424 et seq. [33 USCA §§ 901–950] as made applicable to the District of Columbia, 45 Stat. 600, title 19, D. C. Code, 1929, §§ 11 and 12, 33 USCA § 901 note; title 33, USCA § 902), means "accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury."

The deputy commissioner, as we have pointed out, found as a fact that the medical evidence showed that exposure to thermic changes such as obtained in this case would aggravate a pre-existing condition of arteriosclerosis and precipitate a condition such as that suffered by Kerper, and, as we have already said, this conclusion is sustained by substantial evidence. It is the universal holding of the courts in compensation cases that the fact that an employee is diseased does not bar his right to recover for accidental injury notwithstanding, except for such diseased condition, the injury would not have occurred. The reason of this is stated to be that

the diseased condition of the employee is not the cause of the injury but merely a condition which enables the cause to become operative. Mutual Life v. Dodge (C. C. A.) 11 F.(2d) 486, 59 A. L. R. 1290; New Amsterdam Co. v. Shields (C. C. A.) 155 F. 54; B. & O. R. R. v. Clark (C. C. A.) 59 F.(2d) 595. See, also, cases cited in notes, 19 A. L. R. 95, 28 A. L. R. 204. And we held (Ætna Life Ins. Co. v. Hoage, Deputy Commissioner, decided February 6, 1933, 63 F.(2d) 818) that heat stroke is an accidental injury within the meaning of the federal act. And the Court of Appeals in the Fourth Circuit (B. & O. R. R. v. Clark, supra, page 598 of 59 F.(2d), referring to the same subject, said: "Such an injury is accidental in that it is unforeseen and unexpected. If it results from the conditions under which the work is carried on, there is no reason why it should not be held compensable. In such case, it is one of the casualties of the business; and it is the purpose of the compensation statutes to place the burden of such casualties upon the business and not upon the unfortunate employee."

And so in Beck Min. Co. v. Commission, 88 Okl. 34, 211 P. 69, 28 A. L. R. 197, compensation was awarded to an elderly employee affected with hardening of the arteries who suffered a stroke of apoplexy while engaged in work requiring great physical exertion, on the ground that the continuous physical exertion was a contributing cause. And in Jones Co. v. Industrial Commission, 303 Ill. 410, 135 N. E. 754, 755, it was held that a workman afflicted with arteriosclerosis overcome by exertion in the heat of a molding room as a result of which he suffered a cerebral hemorrhage was entitled to compensation because of accidental injury arising out of the employment. See, also, Hughes v. Trustees, 245 N. Y. 201, 156 N. E. 665; Wheeling Corrugating Co. v. McManigal (C. C. A.) 41 F.(2d) 593; Mutual Life v. Dodge, supra; Ætna Ins. Co. v. Brand (C. C. A.) 265 F. 6, 13 A. L. R. 657. The compensation statute does not require that there should be an unusual or extraordinary condition existing at the time of the injury or incident to it, and so the fact that other workmen may have gone into these refrigerating rooms without injury does not affect the question.

■ The evidence definitely shows that the influence of the excessive cold on the leg and foot of appellant Kerper caused a numbness which on previous occasions he was able to shake off by the physical exertion of stamping his foot and forcing a natural flow of his blood, but that on December 4th this result did not follow but that pain and numbness increased until it became necessary to secure the services of a physician, and what thereafter followed was the natural result of what had previously occurred. In other words, on account of the diseased condition of the blood vessels, the frequent, daily exposure to the intense cold, culminating in the work of December 4th, had set in motion a chain of circumstances resulting ultimately in the amputation of the leg. We think this was an unlooked for event and was therefore an accident—one of that nature described by Lord Loreburn in Clover, Clayton & Co. v. Hughes, L. R. Appeal Cases, 1910, page 242, where he said: "An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or condition of health."

We therefore reach the conclusion that the deputy commissioner was correct in holding that the amputation was proximately caused by the condition of employment.

■ We likewise agree with the deputy commissioner that the failure on the part of the appellant Kerper to give the employer or insurance carrier notice of the injury within thirty days, as is required by section 12 of the act (33 USCA § 912), was properly excusable in the circumstances. The deputy commissioner, in exercising the privilege the act confers, said it should be excused "for the reason that the nature of the disability, and its relation to the employment, was not known by the claimant, and was of such character that only expert medical opinion could establish the causal relation." The evidence shows that Kerper's physician was not impressed with the seriousness of the injury and its probable consequences until nearly the end of December. The written notice required to be given was dated February 28, 1931, but the record tends to show that there was actual notice prior to this time. The statute (section 12 (d) (2), 33 USCA § 912 (d) (2) provides that failure to give the notice shall not bar the claim "if the deputy commissioner excuses such failure on the ground that for some satisfactory reason such notice could not be given." It would be going very far to say that the reason given by the deputy commissioner for his action in excusing the failure was not a reasonable exercise of his discretion and judgment.

■ Nor are we any more impressed with the

point made by appellee that it had ceased to be the insurer of the employer. The injury, as we have already pointed out, occurred December 4th and not, as suggested, after the 1st of January, when the resection operation was performed. Admittedly cancellation of the policy could not in any case be regarded as effective prior to January 1, 1931.

■ Appellee also insists that it is not liable for the hospital and doctor's bills contracted by petitioner without notice to it. The deputy commissioner's decision apparently places the responsibility for these payments on appellee, though no order to that effect was issued. In view of what follows, we assume that none will be. The statute (section 7 (a), 33 USCA § 907 (a) makes it the duty of the employer to furnish medical treatment and hospital service, and upon his failure to do so gives the employee the opportunity to do so at the employer's expense, but the act further provides: "The employee shall not be entitled to recover any amount expended by him for such treatment or services unless he shall have requested the employer to furnish the same and the employer shall have refused or neglected to do so, or unless the nature of the injury required such treatment and services and the employer or his superintendent or foreman having knowledge of such injury shall have neglected to provide the same; nor shall any claim for medical or surgical treatment be valid and enforceable, as against such employer, unless within twenty days following the first treatment the physician giving such treatment furnish to the employer and the deputy commissioner a report of such injury and treatment, on a form prescribed by the commission."

What we have said with relation to the failure of injured to make a report of the injury is not controlling as to this provision of the statute. The act requires the physician, where he looks to the insurance carrier for his fee, to report his services within twenty days. So far as we are able to find from the record, none of the doctors employed by Kerper ever filed such claim until after the hearing, or around May 1, 1931. There is no provision of the act which permits the deputy commissioner to waive the requirements in this respect, and there is no evidence of compliance by either injured or the doctors or the hospital with the requirements of the act. In these circumstances we think the deputy commissioner's decision with relation thereto was incorrect in law.

The decree below will be reversed and the

case remanded to the lower court with instructions to dismiss the bill. The costs in this court and in the Supreme Court of the District will be charged against the appellee.

Reversed.