Henry I. Quinn and Austin F. Canfield, of Washington, D. C., for appellant.

Leslie C. Garnett, U. S. Atty., J. J. Wilson, H. L. Underwood, Louis O. Hodges, Jr., and Karl Kindleberger, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

## NATIONAL CASUALTY CO. v. HOAGE,
### Deputy Com'r (VASS, Intervener).
### No. 6170.

United States Court of Appeals for the District of Columbia.

Argued Oct. 2, 1934.

Decided Nov. 5, 1934.

GRONER, Associate Justice.

This is an appeal under the District of Columbia Compensation Act (Longshoremen's and Harbor Workers' Compensation Act [33 USCA § 901 et seq.]; D. C. Code 1929, T. 19, §§ 11, 12 [33 USCA § 901 note]).

Harry Vass, a young colored man, was employed as a janitor in an apartment house in Washington. His duties required him to attend to an incinerator located in the basement of the building. On August 31, 1932, while Vass was working in the incinerator room, a mechanic was repairing the Frigidaire system likewise located in the basement. A large amount of a gas known as "sulphur-dioxide gas" was accidentally liberated by the mechanic and more or less filled the entire basement. The mechanic wore a gas mask and thus avoided the effects of the escaping gas, but Vass was wholly unprotected and apparently was subjected to the dangerous consequences of the poisonous gas. He began to feel ill and immediately left the basement and went to the outside of the house, where he became unconscious.

Vass was removed to the hospital in an ambulance, and after a short time regained consciousness. The doctor who examined him ascertained that he had moist râles in

the right and left lobes of his lungs. Later in the evening he was permitted to return to his home. Two days later he was examined by the physician of the employer, who found no disturbance of the lungs but reached the conclusion he was suffering from temporary residuals—which we understand to be an abscess resulting from a previous inflammation—due to the inhalation of the gas. Two or three days later the doctor sent him again to the hospital where he was attended by the doctor every two or three days until the early part of October, when the doctor, unable to find anything definitely wrong with him, ordered his return to work.

Vass continued, however, to suffer from the effects of the gas, and on October 24, seven weeks after the event, he was sent to a lung specialist, who in turn suggested that he be sent to a specialist on the nose and throat, and this was done, resulting in a diagnosis of pharyngitis and laryngitis. On the following December 1st Vass was admitted again to the hospital, where his trouble was pronounced "grippe," and he was allowed to return home. On the 3d of December he was again brought to the hospital. The diagnosis this time was "lung abscess." About the middle of January he died of lobar pneumonia. The final diagnosis was "lung abscess in the right base" and the cause of death "lobar pneumonia."

The Deputy Commissioner allowed compensation, saying in his findings of fact that Vass had at no time fully recovered from the disability caused by the exposure to the gas; that there was a causal connection between the exposure to the gas and the death, resulting from a series of pathological conditions connected with and relating back to the exposure to the gas without any intervening or independent cause to which the death might be attributed. On the hearing in the lower court Judge Atkins, after a thorough hearing, reached the conclusion that there was substantial testimony to support the Commissioner's findings. The appeal to this court is based upon the point that the evidence, fairly considered, does not support the Deputy Commissioner's award.

We have been at pains to read the evidence carefully, because, as we have already said in a number of other cases, we regard it as our duty to determine from the record whether there is substantial evidence in the record to sustain the Commissioner's finding. In this case there is. Deceased was a young man who, prior to the injury, was at all times in good health. From the moment of the injury—which undeniably arose out of and in the course of his employment—to his death approximately five months later, he was an invalid in the care of physicians, all the time suffering from an inflammatory condition of the bronchial tubes, and it does not matter whether his death resulted directly from this irritation of the throat or whether the injury created a secondary infection in the form of a lung abscess. The chain of causation, beginning with the inhalation of the gas and ending in his death, as found by the Deputy Commissioner, is satisfactorily shown by the evidence. We think it is equally true that there is substantial evidence to sustain the Commissioner's finding that there was no intervening or independent cause of death. In these circumstances it is our plain duty to sustain the Deputy Commissioner's findings. Crowell v. Benson, 285 U. S. 22–46, 52 S. Ct. 285, 76 L. Ed. 598; Voehl v. Indemnity Co., 288 U. S. 162, 53 S. Ct. 380, 77 L. Ed. 676, 87 A. L. R. 245; Powell v. Hoage, 61 App. D. C. 99, 57 F.(2d) 766; Fidelity & Casualty Co. v. Burris, 61 App. D. C. 228, 59 F.(2d) 1042.

Affirmed.