Madge VINSON, surviving wife, et al.,
Appellants,

v.

Charles EINBINDER, Deputy Commissioner, Bureau of Employees' Compensation, et al., Appellees.

No. 16582.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 22, 1962.

Decided June 14, 1962.

Petition for Rehearing En Banc Denied
En Banc Sept. 12, 1962.

Mr. Martin E. Gerel, Washington, D. C., with whom Messrs. Lee C. Ashcraft and Joseph H. Koonz, Jr., Washington, D. C., were on the brief, for appellants.

Mr. Herbert P. Miller, Asst. Sol., Dept. of Labor, with whom Messrs. Charles Donahue, Sol., Dept. of Labor, David C. Acheson, U. S. Atty., and Nathan J. Paulson, Asst. U. S. Atty., were on the brief, for appellee Einbinder.

Mr. M. S. Mazzuchi, Washington, D. C., for appellees Aetna Casualty & Surety Co. and McCloskey Enterprises, Inc.

Before EDGERTON, BAZELON and WASHINGTON, Circuit Judges.

EDGERTON, Circuit Judge.

This is a workman's compensation case. 44 Stat. 1424, 33 U.S.C.A. § 901; 45 Stat. 600, D.C.Code § 36–501 (1961).

On July 7, 1959, Henry Vinson was "driving and backing" his employer's truck "in various positions", on the construction site of a new House Office building, when he slumped over in the cab of the truck and died instantly of coronary insufficiency and coronary sclerosis. He had been driving and occasionally backing for 1½ to 2½ hours. A crane was mounted on the truck. The weight of the whole was about 68,000 pounds (34 tons). The truck did not have power steering.

Though the work Vinson was doing when he died was, as the Deputy Commissioner found, a normal part of his job, the Deputy Commissioner denied compensation to Vinson's widow and chil-

dren. He found that Vinson "was not subjected to heavy physical strain" and that death "did not result from injury arising out of and in the course of the employment". There is no substantial support in the record for these findings. The District Court therefore erred in granting summary judgment for the appellees in this suit by the appellants to set aside the order denying compensation.

■ ■ "Our task is to ascertain whether the Deputy Commissioner's findings are supported by substantial evidence upon the record considered as a whole * * *. The reviewing court will not sustain the administrative findings merely because they are substantiated by some isolated evidence. Our review must also take account of the settled rule that the Act is to be construed with a view to its beneficent purposes. Doubts, including the factual, are to be resolved in favor of the employee or his dependent family." Friend v. Britton, 95 U.S.App.D.C. 139, 141, 220 F.2d 820, 822.

Anyone who distinctly remembers turning and backing an ordinary car, without power steering, when the car was moving slowly, knows it was hard work. Obviously it would have been harder if the car had weighed 34 tons. If there were no evidence in the present record that driving and backing 34 tons of truck and crane, without power steering, on a construction site, was strenuous work, we might perhaps take judicial notice of the fact. But there is ample evidence.

A fellow employee of Vinson testified that moving the steering wheel of the truck was "hard labor * * * very hard. A hard maneuver. * * * I know of many times I reached up and actually helped him pull the wheel around." A heavy "counterweight" was usually over the rear wheels of the truck but was over the front wheels when Vinson died. The operator of the crane on the truck testified that this position of the counterweight made steering hard for the truck driver and that sometimes "it would take two people [to] turn the wheel. * * * When you make a tight turn you need all the help you can get." A foreman testified that when Vinson died he was "maneuvering and backing in to a very tight and difficult spot." The fellow employee had suggested to Vinson that he "get a lighter job * * * because it was just too much for a man his age and it took a young man with a lot of muscle power to drive it." He made this suggestion "watching him sweat and try to turn that rig around, trying to get it back into places and stuff like that * * *. Because I seen it was hard work for him." Vinson himself had talked about getting an easier job "because it was pretty hard to steer, especially in that particular position." Shortly before Vinson died, as on earlier occasions, he had been helped in turning the wheel. There is no suggestion he was being helped when he died.

A witness who succeeded Vinson as operator of the truck testified that it was "quite hard" to steer and that he needed help a "number of times". He undertook to explain this by saying that "with the anchor bolts in the positions that they were in accordance with the H beams, you have to back in between the H beams and the anchor bolts being in the way, * * * you have to stop, turn the wheel while sitting still, which is a lot harder to steer than it is if you are moving, and to miss these anchor bolts, you have to move the wheel as far as possible to clear these bolts and to get back in between the H beams. And it is quite a strain." [1]

One witness who had operated a similar "rig" but not this one thought "extraordinary strength" was not required. Another such witness thought this truck was no more difficult to manage than any other truck with manual steering but "all truck driving is a manual operation and it is hard work".

1. As this witness was the last, the medical witnesses did not have the benefit of his testimony.

Dr. Ethridge, a specialist in cardiology, concluded from the autopsy report that Vinson had a pre-existing arteriosclerosis. He thought the work Vinson "was performing was competent to precipitate, to accelerate an arteriosclerotic condition to the point where it causes death from coronary insufficiency, secondary to sclerosis." "Strenuous physical effort" could, and probably did, cause Vinson's death. "Sometimes, this exertion, physical exertion, causes no difficulty and other times it could cause either death or a heart attack * * * and it is often very difficult to know why on a particular day a certain degree of effort produces a lot of trouble—I mean, patients end up in the hospital because they have difficulty or even die, and on another day seemingly might have done something similar without difficulty."

Dr. Walsh, another specialist in cardiology, gave it as his "conclusion that there was no evidence that there was a relationship between his work and his death", but he based this conclusion on a belief that there was no "definite evidence * * * as to whether this man at the time that he died was engaged in extra strenuous activity * * *." No one who knew the record could have entertained such a belief. He recognized that if "one was doing something very strenuous, something unusual, then we would say, or I would say it was probably that there was a relationship between actually an individual's sudden death due to acute coronary insufficiency and this unusual effort." He recognized that "Certainly the job must have been at times strenuous if it took two men to turn the wheel of the truck. That would be obvious to everyone." Since Vinson was "maneuvering and backing in to a very tight and difficult spot" when he died, it seems clear that this was one of the times when his job was very strenuous. He was doing alone the sort of thing it sometimes took two men to do.

The judgment is reversed and the case remanded for further proceedings consistent with this opinion.

Reversed and remanded.