**J. V. VOZZOLO, INC., Successor to James Vincent Vozzolo, et al., Appellants,**

v.

**Theodore BRITTON, Deputy Commissioner, Bureau of Employees' Compensation, et al., Appellees.**

**No. 20171.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 9, 1966.

Decided Feb. 14, 1967.

Francis J. Ford, Washington, D. C., for appellants.

George M. Lilly, Atty., Dept. of Labor, of the bar of the Supreme Court of North Carolina, pro hac vice, by special leave of court, with whom Charles Donahue, Sol., Dept. of Labor, Alfred H. Myers, Atty., Dept. of Labor, David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee Britton.

Before BAZELON, Chief Judge, and TAMM and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Milton J. Thompson was employed for several years as a truck mechanic by J. V. Vozzolo, Inc. While Thompson was performing services for Vozzolo on March 12, 1958, a transmission weighing approximately 80 pounds fell from a vehicle beneath which he was working and landed on his chest. The strain of lifting the transmission from his body, superimposed upon preexisting coronary arteriosclerosis from which he suffered, produced an acute anteroseptal myocardial infarct. Thompson was wholly disabled from March 15 to May 18, 1958, during which period compensation benefits for temporary total disability were voluntarily paid.

Upon Thompson's return to work, he was favored by assignments of light tasks and was furnished a helper who performed the heavy activities incidental to his duties. Compensation payments continued voluntarily on the basis of a partial disability. On March 18, 1963, however, Thompson again left his job, to which he was never to return. Subsequent diagnosis revealed an acute anterolateral myocardial infarct, with which was coupled a considerable degree of congestive heart failure, resulting in total disability.

Thompson filed two claims for compensation benefits under the Longshoremen's and Harbor Workers' Compensation Act.[1] The first pertained to the accident of March 12, 1958, in which he was injured by the falling transmission. The second alleged that he had sustained a new and distinct accidental injury on March 9, 1963 by lifting a truck tire and rim weighing about 100 pounds. These claims were consolidated for hearing. The Deputy Commissioner disallowed the second claim, rejecting Thompson's version of the events asserted in support of it, and no review of that determination was sought.

As to the first claim, however, the Deputy Commissioner found that as a consequence of the fall of the transmission, Thompson "suffered trauma to the chest and heart resulting in coronary infarction, post-coronary syndrome with myocardial insufficiency and congestive heart failure and recurrent coronary infarction," resulting in temporary total disability from March 15 to May 18, 1958, temporary partial disability from May 19, 1958 to March 18, 1963,[2] and recurrent temporary total disability from March 19, 1963 onward. Compensation was awarded conformably with these findings, with credit for payments previously made.

Vozzolo and its insurance carrier instituted the action[3] below to review and set aside the compensation order. The Deputy Commissioner filed a motion, and the plaintiffs a cross-motion, for summary judgment on the administrative record. The District Court sustained the Deputy Commissioner's findings and entered summary judgment in his favor. This appeal followed.

---

1. 44 Stat. 1424 (1927), as amended, 33 U.S.C. §§ 901 to 950, made applicable to the District of Columbia by the Act of May 17, 1928, 45 Stat. 600 (1928), D.C.Code §§ 36–501 to 36–502 (1961 ed.).

2. It was found that Thompson's average weekly wages during this period equalled or exceeded the average weekly wages he was earning when initially injured, but that such wages did not fairly represent his wage-earning capacity as diminished by that injury.

3. Pursuant to 33 U.S.C. § 921(b).

Appellants concede that the employee's 1958 heart injury is compensable, and admit liability for compensation during the employee's total disability from March 15 to May 18, 1958 and his partial disability from May 19, 1958 to March 18, 1963, and for continuing partial, but not total, disability beyond the date last mentioned. On the claim that the two infarcts were separate cardiac injuries, and on an uncontradicted showing that each had its etiology in the employee's arteriosclerosis, and with the record disclosing no specific event immediately precipitating the 1963 infarction, appellants dispute the finding that the 1958 accident caused total disability in 1963. Their position, as we understand it, is that each infarction produced a quantum of disability which only in the aggregate rendered the employee totally unfit for work, and that compensation should be apportioned in the degree that the 1958 infarction contributed to that result.

The Act affords compensation for any "accidental injury or death arising out of and in the course of employment,"[4] and in approaching its application to the case at bar, we remain advertent to fundamentals. It operates "to relieve persons suffering such misfortunes of a part of the burden and to distribute it to the industries and mediately to those served by them."[5] It is to be construed liberally for the benefit of employees and their dependents.[6] In their favor doubts, including the factual, are to be resolved.[7]

The Act authorizes the filing of a claim for compensation and provides that "the deputy commissioner shall have full power and authority to hear and determine all questions in respect of such claim."[8] It also provides that his compensation order may be set aside on review only "[i]f not in accordance with law."[9] Judicially expressed, his findings "are to be accepted unless they are unsupported by substantial evidence on the record considered as a whole."[10] Our primary task upon this appeal is to determine whether the findings before us survive this test.

When struck by the transmission in 1958, the employee was already suffering from coronary arteriosclerosis, an employment-unrelated disease. This condition, the evidence makes plain, bore a responsibility for each of the two infarctions he experienced thereafter. With it, the employee incurred the first infarct when he lifted the transmission from his chest; without it, the second would hardly have occurred.[11] These circumstances, however, could not militate against allowance of the claim if otherwise valid. Benefits under the Act are not limited to employees who happen to enjoy good health; rather, employers ac-

4. 33 U.S.C. § 902(2).

5. Baltimore & Philadelphia Steamboat Co. v. Norton, 284 U.S. 408, 414, 52 S.Ct. 187, 76 L.Ed. 366 (1932).

6. Voris v. Eikel, 346 U.S. 328, 333, 74 S. Ct. 88, 98 L.Ed. 5 (1953); Baltimore & Philadelphia Steamboat Co. v. Norton, supra note 5, 284 U.S. at 414, 52 S.Ct. 187; Hancock v. Einbinder, 114 U.S.App. D.C. 67, 70, 310 F.2d 872, 875 (1962); Phoenix Assurance Co. of New York v. Britton, 110 U.S.App.D.C. 118, 120, 289 F.2d 784, 786 (1961).

7. Howell v. Einbinder, 121 U.S.App.D.C. 312, 314, 350 F.2d 442, 444 (1965); Hancock v. Einbinder, supra note 6, 114 U.S.App.D.C. at 70, 310 F.2d at 875; Phoenix Assurance Co. of New York v. Britton, supra note 6, 110 U.S.App.D.C. at 120, 289 F.2d at 786; Friend v. Brit-

ton, 95 U.S.App.D.C. 139, 141, 220 F. 2d 820, 821, cert. denied Harry Alexander, Inc. v. Friend, 350 U.S. 836, 76 S.Ct. 72, 100 L.Ed. 745 (1955).

8. 33 U.S.C. § 919(a).

9. 33 U.S.C. § 921(b).

10. O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 508, 71 S.Ct. 470, 95 L.Ed. 483 (1951). See also Voehl v. Indemnity Insurance Co., 288 U.S. 162, 166, 53 S.Ct. 380, 77 L.Ed. 676 (1933); Friend v. Britton, supra note 7, 95 U.S.App.D.C. at 141, 220 F.2d at 821; Robinson v. Bradshaw, 92 U.S.App.D.C. 216, 217, 206 F.2d 435, 436, cert. denied 346 U.S. 899, 74 S.Ct. 226, 98 L.Ed. 400 (1953).

11. The evidence was to the effect that coronary arteriosclerosis is practically the sole prerequisite for myocardial infarction.

cept with their employees the frailties that predispose them to bodily hurt. "[T]he fact that an employee is diseased does not bar his right to recover for accidental injury notwithstanding, except for such diseased condition, the injury would not have occurred,"[12] and harm resulting from aggravation by the employment of a pre-existing infirmity, it has many times been decided, is injury within the meaning of the Act.[13] The Deputy Commissioner quite properly investigated the consequences flowing from superimposition of the 1958 employment accident upon the malady with which the employee was afflicted.

Our review of the record confirms the adequacy and capability of the evidence as a whole to establish a causal relationship between the 1958 employment accident and the disability for which appellants disclaim liability. Because of the initial infarct, and with the employee's underlying arteriosclerotic condition, his susceptibility to another infarction was increased materially. As one witness unequivocally testified, "he was a candidate therefore for further myocardial infarction, particularly at a time when he would do something very strenuous." Another witness pointed to the possibility that scar tissue forming after the 1958 heart injury so compromised the employee's blood supply that he became more likely to suffer future attacks. Between 1958 and 1963, the employee experienced coronary insufficiency, dyspnea upon rapid or prolonged walking and, according to medical histories, chest discomfort upon exertion.

Increasing angina over a two-week period culminated in a severe attack for which the employee was hospitalized in March, 1963. Post-admission procedures revealed the second infarction, coupled with congestive heart failure. The final diagnosis was post-coronary syndrome, with myocardial insufficiency and incipient congestive heart failure. The employee now had a hopelessly malfunctioning heart, and was totally disabled.

Through the unimpeached and uncontradicted medical evidence before the Deputy Commissioner, the unbroken linkage of cause and effect could be traced. Quite easily it might be concluded that the incident involving the falling transmission produced the first infarct, which in turn contributed vitally both to the second infarct, by enlarging the potential for its occurrence, and to the incapacitating congestive heart failure, by combining with the second infarct to produce it. And it was inferable on the whole of the evidence that the condition which totally disabled the employee in 1963 would not have come about but for the fact that he had the two infarcts rather than just one. That inference would coincide with the opinion expressed by one expert that while it is possible that the disability resulted only from the second infarct, it is more likely that it occurred in consequence of both.

We perceive no deterrent to the Deputy Commissioner's acceptance of the inference incorporating the greater of these two probabilities as the basis for a finding on causation. It is unimportant that the basic facts generating the

12. Hoage v. Employers' Liability Assurance Corp., 62 App.D.C. 77, 79, 64 F.2d 715, 717, cert. denied Employers' Liability Assurance Corporation v. Kerper, 290 U.S. 637, 54 S.Ct. 54, 78 L.Ed. 554 (1933).

13. Howell v. Einbinder, *supra* note 7; Hancock v. Einbinder, *supra* note 6; Vinson v. Einbinder, 113 U.S.App.D.C. 246, 307 F.2d 387 (1962), cert. denied Aetna Cas. & Sur. Co. v. Vinson, 372 U.S. 934, 83 S.Ct. 880, 9 L.Ed.2d 765 (1963); Vendemia v. Cristaldi, 95 U.S.App.D.C. 230, 232, 233, 221 F.2d 103, 105, 106 (1955); Friend v. Britton, *supra* note 7; Robinson v. Bradshaw, *supra* note 10; Great Atlantic & Pacific Tea Co. v. Cardillo, 75 U.S.App.D.C. 342, 127 F.2d 334 (1942); Hoage v. Royal Indemnity Co., 67 App. D.C. 142, 90 F.2d 387, cert. denied Royal Indemnity Co. v. Cardillo, 302 U.S. 736, 58 S.Ct. 122, 82 L.Ed. 569 (1937); London Guarantee & Accident Co. v. Hoage, 63 App.D.C. 323, 324, 72 F. 2d 191, 192 (1934); Hoage v. Employers' Liability Assurance Corp., *supra* note 12, 62 App.D.C. at 79, 64 F.2d at 717; New Amsterdam Casualty Co. v. Hoage, 61 App.D.C. 306, 62 F.2d 468 (1932), cert. denied 288 U.S. 608, 53 S.Ct. 400, 77 L. Ed. 982 (1933).

inference were uncontroverted rather than disputed, or that diverse inferences were possible,[14] or that, in terms of the evidence, the inference was permissible but not compelled.[15] Nor could we disturb the finding even if we considered the opposite inference more appealing, or felt that the one chosen was factually questionable.[16] "The Deputy Commissioner alone is charged with the duty of initially selecting the inference which seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court," [17] and we must accept inferences he draws "unless they are irrational or 'unsupported by substantial evidence on the record * * * as a whole.' ".[18]

■ These evidentiary postulates, which to us are substantial,[19] give firm support to the finding that the employment-related 1958 infarction was causally related to the disabling condition brought to light in 1963. The Act requires payment of compensation "irrespective of fault as a cause for the injury," [20] and liability therefor is not measured by the commonplace doctrine of proximate cause developed in the law of torts.[21] Sequential events originating naturally in an employment accident, and contributing without intervention of an independent cause to an incapacitating injury, establish adequately the nexus required.[22] Here, unlike situations where compensation was sought for a condition completely divorced from the incipient injury,[23] the causal chain from accident to disability is clear and complete.[24]

■ In so concluding, we have kept in full view appellants' contention that the two infarcts were distinct cardiac injuries, but this, we think, misses the point. The crucial inquiry the Deputy Commissioner had to make was whether the second infarct, like the first, resulted from an employment-bred aggravation of the employee's arteriosclerotic condition. That they occurred at different times and in different locations of the heart did not furnish the answer, and this circumstance became impotent in the light of the finding that the later infarction was but episodic in the sequence of consequences flowing from the 1958 accident.

---

14. Cardillo v. Liberty Mutual Insurance Co., 330 U.S. 469, 478, 67 S.Ct. 801, 91 L.Ed. 1028 (1947).

15. O'Leary v. Brown-Pacific-Maxon, Inc., *supra* note 10, 340 U.S. at 508, 71 S.Ct. 470.

16. Cardillo v. Liberty Mutual Insurance Co., *supra* note 14, 330 U.S. at 478, 67 S.Ct. 801.

17. *Ibid.*

18. O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc., 380 U.S. 359, 362, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965). See also O'Leary v. Brown-Pacific-Maxon, Inc., *supra* note 10, 340 U.S. at 507–509, 71 S.Ct. 470; Cardillo v. Liberty Mutual Insurance Co., *supra* note 14, 330 U.S. at 477–478, 67 S.Ct. 801.

19. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Avignone Freres, Inc. v. Cardillo, 73 App.D.C. 149, 150, 117 F.2d 385, 386 (1940), quoting Consolidated Edison Co. of New York v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

20. 33 U.S.C. § 904(b).

21. Avignone Freres, Inc. v. Cardillo, *supra* note 19; Hartford Accident & Indemnity Co. v. Cardillo, 72 App.D.C. 52, 112 F. 2d 11, cert. denied 310 U.S. 649, 60 S.Ct. 1100, 84 L.Ed. 1415 (1940).

22. See Great American Indemnity Co. v. Cardillo, 77 U.S.App.D.C. 306, 135 F.2d 241 (1943); Avignone Freres, Inc. v. Cardillo, *supra* note 19; New Amsterdam Casualty Co. v. Cardillo, 71 App.D.C. 172, 108 F.2d 492 (1939); National Casualty Co. v. Hoage, 64 App.D.C. 33, 73 F.2d 850 (1934). See also cases cited *supra* note 13.

23. See Richardson v. Britton, 89 U.S.App. D.C. 391, 192 F.2d 423 (1951), cert. denied 343 U.S. 920, 72 S.Ct. 676, 96 L.Ed. 1334 (1952); Carson v. Cardillo, 77 U.S. App.D.C. 82, 132 F.2d 604 (1942); Hoage v. Liberty Mutual Insurance Co., 64 App. D.C. 395, 78 F.2d 874 (1935); Powell v. Hoage, 61 App.D.C. 99, 57 F.2d 766 (1932). See also Lumbermen's Mutual Casualty Co. v. Einbinder, 120 U.S.App. D.C. 56, 343 F.2d 338 (1965).

24. See the cases cited *supra* notes 13 and 22.

■ We are mindful, too, that the record does not isolate a specific event as the catalyst for the 1963 infarction, but the argument on this score also seems to incorporate a misapprehension. If, as the fact was found, that infarction was causally related to an event transpiring in the course of the employment, it was not incumbent upon the employee to demonstrate that it was additionally brought on by some new job-connected occurrence. Indeed, there was medical testimony that infarction need not be precipitated by physical stress, and that very frequently it occurs during rest or sleep.

■ Moreover, the Act presumes that, in the absence of substantial evidence to the contrary, a compensation

claim falls within rather than outside its provisions.[25] The record makes no substantial evidentiary disclosure that would support the proposition that the 1963 infarction was incited by anything outside the employment.[26] The conclusion, in these circumstances, that the infarction under scrutiny was an added consequence of the 1958 accident is fully consistent with the statutory presumption and with our past decisions applying it.[27]

The District Court correctly granted summary judgment in favor of the Deputy Commissioner and denied appellants' countervailing motion. Its judgment will accordingly be

Affirmed.

---

25. "In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary—(a) That the claim comes within the provisions of this chapter. * * * " 33 U.S.C. § 920.

26. We do not regard the Deputy Commissioner's disposition of the companion claim as having that effect. As mentioned previously, the employee's effort in that proceeding to obtain compensation for temporary total disability subsequent to March 18, 1963, was predicated factually upon the lifting of a heavy truck tire and rim on March 9, 1963. Largely on findings that the employee had not utilized opportunities to mention such an occurrence, and that the employer's records failed to show the removal of a truck tire and rim on that date, "the testimony of the claimant as to the fact of the alleged injury on March 9, 1963 was," in the words of the Deputy Commissioner, "deemed incredible." Rejection of the claim was rested solely upon the ultimate finding "[t]hat the claimant did not sustain an injury on March 9, 1963, as alleged," and this unappealed conclusion we, of course, accept as we must. But there was no finding, or even an intimation, that an employment event other than that relied on by the employee had not occurred to directly induce the second infarction, or that it was brought on by something outside the employment. We therefore cannot accept the Deputy Commissioner's ac-

tion as a finding that the second infarction was not related to the employment.

In passing we also note cases holding that an employee who sustains a compensable injury, and later an additional though perhaps employment-unrelated injury as a natural result of the original injury, is entitled to compensation for both. Zurich General Accident & Liability Insurance Co. v. Daffern, 81 F.2d 179 (5th Cir.), cert. denied 298 U.S. 667, 56 S.Ct. 751, 80 L.Ed. 1391 (1936) ; Cyr v. Crescent Wharf & Warehouse Co., 211 F.2d 454 (9th Cir. 1954) ; Head Drilling Co. v. Industrial Accident Comm., 177 Cal. 194, 170 P. 157 (1918); Continental Casualty Co. v. Industrial Comm., 75 Utah 220, 284 P. 313 (1929).

27. See Hancock v. Einbinder, *supra* note 6, 114 U.S.App.D.C. at 71, 310 F.2d at 876; Travelers Insurance Co. v. Donovan, 95 U.S.App.D.C. 331, 333–334, 221 F.2d 886, 888–889 (1955); Robinson v. Bradshaw, *supra* note 10, 92 U.S.App.D.C. at 219–220, 208 F.2d at 438–439; Hartford Accident & Indemnity Co. v. Cardillo, *supra* note 21, 72 App.D.C. at 54, 58, 112 F.2d at 13, 17; Maryland Casualty Co. v. Cardillo, 71 App.D.C. 160, 107 F.2d 959 (1939). See also O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc., *supra* note 18, 380 U.S. at 362–363, 85 S.Ct. 1012; Del Vecchio v. Bowers, 296 U.S. 280, 286–287, 56 S.Ct. 190, 80 L.Ed. 229 (1935); Wolff v. Britton, 117 U.S.App.D.C. 209, 212, 328 F.2d 181, 184 (1964).