**ATLANTIC MARINE, INC. and Hartford Accident & Indemnity Company, Petitioners,**

v.

**Julius BRUCE and Director, Office of Workers' Compensation Programs, U. S. Department of Labor (Freda Irene Bruce, Personal Representative of the Estate of Julius Bruce, Substituted in the Place and Stead of Julius Bruce, Deceased), Respondents.**

No. 80–5383.

United States Court of Appeals, Fifth Circuit *. Unit B

Nov. 16, 1981.

* Former Fifth Circuit case, § 9(1) of Public Law 96–452—October 14, 1980.

Thomas Brown, Timothy D. Ellis, Jacksonville, Fla., for Julius Bruce.

Before GODBOLD, Chief Judge, TJOFLAT and THOMAS A. CLARK, Circuit Judges.

GODBOLD, Chief Judge:

Petitioners seek reversal of a decision of the Benefits Review Board awarding Bruce benefits under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*

In 1973 claimant Bruce fell from a scaffold at work and injured his back. He underwent a myelogram [1] and then disc surgery. Because of persisting pain Bruce suffered a severe post-traumatic, anxiety-depressive reaction and was awarded temporary total disability benefits in 1976. In February 1977 Bruce was admitted to a hospital for treatment of his symptoms of marked anxiety, depression, suicidal ideation, and pain. His physicians decided that a second myelogram was needed to ascertain the cause of Bruce's continuing pain. During the morning of the day on which this procedure was scheduled Bruce left the hospital temporarily for a haircut and while gone suffered a heart attack. In the decision under review the Board affirmed a ruling by an administrative law judge that the heart attack was precipitated by Bruce's continuing emotional distress coupled with his apprehension over having to undergo another myelogram and that, therefore, petitioner should pay the medical expenses associated with the heart attack.

Petitioners' primary contention is that the ALJ erred in giving more weight to Doctors Hicks and Rahaim, who testified in Bruce's favor, than to Doctors Lohrbauer and Chinoy, who testified against Bruce.[2]

Boyd, Jenerette, Leemis & Staas, Lloyd C. Leemis, Jacksonville, Fla., for petitioners.

1. A painful diagnostic procedure involving injection of a radiopaque dye into the spinal region.

2. Dr. Hicks, whose qualifications are discussed in text, testified that Bruce's mental condition was "a significant factor in the production" of his heart attack. He characterized Bruce's

First, we reject Petitioners' suggestion that Dr. Hicks was not qualified to testify on the relationship of Bruce's stress to his heart attack. Dr. Hicks was Bruce's treating psychiatrist, and, although he is not trained specifically in cardiology, he is a medical doctor. It was well within the ALJ's discretion to admit Dr. Hicks' expert testimony, particularly considering that the formal rules of evidence do not apply in administrative proceedings but rather "the admissibility of evidence depends only on whether it is such evidence as a reasonable mind might accept as probative," *Young & Co. v. Shea*, 397 F.2d 185, 188 (5th Cir. 1968), *cert. denied*, 395 U.S. 920, 89 S.Ct. 1771, 23 L.Ed.2d 237 (1969).

▪ We also reject petitioners' suggestion that we should review the relative weight assigned by the ALJ to the physicians' testimony.[3] It is fundamental that credibility determinations and the resolution of conflicting evidence are the prerogative of the fact finder, here the ALJ. This principle was most recently applied in *Hullinghorst Industries, Inc. v. Carroll*, 650 F.2d 750, 759 (5th Cir. 1981), a case with remarkably similar facts. At issue there was whether a back injury and its attendant pain, stress, and anxiety had precipitated the claimant's heart condition. There were four physicians split two and two. The claimant had even undergone a myelogram. We held that the "ALJ is not bound to accept the opinion of any particular medical expert; he is entitled to weigh the medical evidence—including the relative credibility of the competing experts . . . ."

▪ Moreover, even if we were to hold that Doctors Lohrbauer and Chinoy should have been given more credence, it is permissible to "reach conclusions contrary to the weight of the medical testimony" by relying on the " 'common sense of the situation.' " *Todd Shipyards Corp. v. Donovan*, 300 F.2d 741, 742 (5th Cir. 1962) (strenuous work caused heart attack, even though the only medical testimony failed to support conclusion). *Accord, Diamond Drilling Co. v. Marshall*, 577 F.2d 1003, 1006–07 (5th Cir. 1978). The ALJ in fact did not base his decision only on the medical testimony but looked to the "force of events" as well. He reasoned that "[a] placing of the factual circumstances in perspective here provides a better framework for understanding than a mere weighing of the medical record to ascertain where the greater strength lies." The ALJ was impressed with the fact that Bruce had suffered severe continuing stress and anxiety over his unremitting back pain and over the prospect that he might never again lead a normal life. According to the ALJ these symptoms reached a "flash point" the morning of Bruce's scheduled second myelogram and resulted in a heart attack. We conclude that based on the record as a whole, including this sequence of events, the Board was correct in finding that there was substantial evidence supporting the ALJ's decision to accept the testimony of Doctors Hicks and Rahaim and reject that of Doctors Lohrbauer and Chinoy.

▪ Petitioners also contend that even if there is some link between Bruce's back

---

mental condition as "virtually the ultimate in stress status" and said that Bruce is the "type of person . . . who is most likely to develop cardiac symptoms and, most of all, a . . . heart attack, [a man] often referred to as a Type A person—high stress [and] high tension . . . ." Dr. Rahaim, an internist, testified more abstractly on the relationship of stress to heart conditions. He said that "stress can precipitate a heart attack," that "it's not the cause of the heart attack, but it can precipitate a person to have a heart attack if they have underlying coronary artery disease."

Dr. Lohrbauer, Bruce's cardiologist, reported rather broadly that Bruce's "heart attack was [not] directly related to [his back injury]." Dr.

Chinoy, an internist who had examined Bruce's medical records, said that he doubted the medical theories holding that stress can cause heart attacks and also stated that Bruce's "problem related to [his] back would have no specific bearing on [his] subsequent heart attack." Both of these doctors admitted though that stress might have played some role in Bruce's heart attack.

3. We do note, however, that because the medical issue reached two areas of specialization, it is reasonable to find Dr. Hicks no less qualified than Dr. Lohrbauer, Bruce's treating cardiologist, who was not trained in psychiatry.

injury in 1973 and his heart attack in 1977, that connection is too tenuous to warrant compensation under the Act. Indeed there is no evidence that Bruce's back injury or the attendant stress was the exclusive cause of his heart attack. Bruce was suffering from arteriosclerosis and according to the evidence it is only because of this underlying physical condition that his stress precipitated his heart attack. Petitioners direct our attention to our recent opinion in *Mississippi Coast Marine v. Bosarge*, 637 F.2d 994, 1000 (5th Cir. 1981) where we stated that "[a] subsequent injury resulting from a primary compensable injury is compensable ... as long as the subsequent progression of the condition is not shown to have been worsened by an independent cause."[4] Petitioners argue that here arteriosclerosis is an independent cause that worsened Bruce's heart condition.

Although there is a superficial semantic logic to this argument we do not read our statement in *Bosarge* as applying to the facts of this case.[5] It is clear from prior case law that Bruce's arteriosclerosis would not have obviated compensation had Bruce's heart attack been his first injury. *See Vozzolo v. Britton*, 377 F.2d 144, 147–48 n.13 (D.C.Cir.1967); *Todd Shipyards*, 300 F.2d at 745; *Southern Stevedoring v. Henderson*, 175 F.2d 863, 866–68 (5th Cir. 1949); *Henderson v. Pate Stevedoring Co.*, 134 F.2d 440 (5th Cir. 1943). The result should not differ simply because Bruce suffered the misfortune that his heart attack was his second injury rather than his first. *Accord, Vozzolo*, 377 F.2d at 150 (viewing effect of arteriosclerosis on the compensability the same for first and second heart attacks). We continue to apply the Act's liberal concept of causation[6] to subsequent injuries as well as to initial ones. *Cf. Bosarge*, 637 F.2d at 1000, n.13 (applying to a subsequent injury the policy of the Act that all doubtful questions are resolved in favor of the claimant).[7] We hold then that, because arteriosclerosis is not a supervening cause, and because there is substantial evidence that stress precipitated Bruce's heart attack, the Board's award of compensation is AFFIRMED.

---

**4.** In *Bosarge* the claimant suffered one job-related heart attack, recovered, took a new job, and then suffered a second attack. The issue was whether the second attack was related to the first job. We held that it was, absent evidence of an independent cause.

**5.** We note that there is some tension between the standard used in *Bosarge* and that used in prior Fifth Circuit precedent. Whereas *Bosarge* appears to require only a simple "worsening" to give rise to a supervening cause, in *Voris v. Texas Employers Ins. Assoc.*, 190 F.2d 929, 934 (5th Cir. 1951), we looked for "overpowering" and "nullifying" effects.

**6.** *See Southern Stevedoring*, 175 F.2d at 865 (more liberal than "proximate cause" in tort law); 33 U.S.C. § 902(2) (injury "arising out of and in the course of employment" is covered).

**7.** The passage of time and occurrence of events after a first injury may raise more difficult factual questions concerning the compensability of second injuries, *see, e. g.*, note 4 *supra*. This does not mean, however, that there is a different legal standard for the necessary degree of job relatedness of second injuries.